**MANN CHEMICAL LABORATORIES, INC., Plaintiff**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 57-300.**

United States District Court
D. Massachusetts.

March 2, 1960.

Gerald Gillerman, Slater & Goldman, Boston, Mass., for plaintiff.

George H. Lewald, Asst. U. S. Atty., Boston, Mass., for defendant.

SWEENEY, Chief Judge.

This is an action brought under the authority of 28 U.S.C. § 1346(a) (2), and is alleged to arise out of an express contract between the parties. The contract was for the furnishing of certain bottles of water purification tablets on specified dates. These tablets were intended for the use of the Armed Forces.

The case comes before this Court after decision by the Armed Services Board of Contract Appeals, hereinafter referred to as the "Board", and in accordance with the Court's Order of December 29, 1958, D.C. 174 F.Supp. 563, was tried on the record and not "de novo". The plaintiff was allowed to testify at length on the facts surrounding the rejection of the tablets because of their spotted appearance.

### Findings of Fact

The plaintiff contracted to furnish the defendant on specified dates with a large number of bottles of water purification tablets. The delivery dates in question were May 5th, May 20th, and June 5th, all in the year 1951. The plaintiff's claim is divisible into two parts: (1) Damages for wrongful termination of the contract with relation to the plaintiff's inability to secure acceptable bottles, and (2) Damages caused to the plaintiff by reason of the government's failure to accept the tablets themselves when proffered.

Both claims were processed before the Contracting Officer and the Board, and were decided against the plaintiff. The Board specifically found on reconsideration of its prior decision that the bottle delay was not excusable in that "the condition necessary for holding the default to have been excusable was not shown". The record amply supports this finding, and in fact at the hearing before this Court the plaintiff limited its evidence and argument to the second phase of this case.

Next we are met with the question whether the government unreasonably delayed the acceptance of the proffered tablets to the damage of the plaintiff, thereby breaching the contract.

This Court is limited in its adjudication to the question whether the administrative decision by the Board was supported by the evidence and was not capricious or arbitrary. A review of the record taken in conjunction with the evidence presented at the trial convinces the Court that the plaintiff is not entitled to be compensated for its expenses attendant upon the defendant's delay in immediately accepting the tablets delivered on the three dates in question.

Late in June or in early July the plaintiff anticipated that certain brown spots would appear on what should be white tablets, and communicated this fact to the defendant, advising it that the spots were the result of excess moisture due to high humidity, and that they were not impurities. The government, in spite of the representations by the plaintiff, refused to accept the tablets until after an independent analysis of the tablets had been made. As a result of this analysis, the government, in December of 1951, issued shipping instructions to the plaintiff, and accepted the tablets in question. Thereafter the plaintiff submitted claims against the government for the wrongful termination of and for breach of the contract by reason of its failure to accept the deliveries as and when proffered.

The tablets were for the purification of what might otherwise be contaminated water, and it could be reasonably assumed that they were to be used under extreme conditions attendant upon the military invasion of new territory, and were for the safety and well being of the invading troops. While the contract did not call for white tablets, nevertheless the appearance of brown spots was not common, and suggested the probable presence of a foreign material.

Actually, if the quality of the tablets was impaired by the brown spots, they were worthless for the purpose intended, and this Court feels that the government was quite right in the careful steps that it took to be sure that the tablets were in strict conformance with the specifications. They could hardly do less, having

**42**

in mind the purpose for which the tablets were intended. I find that the failure to accept the tablets when first offered because of their appearance was reasonable. The methods of sampling and testing by the government were normal under the circumstances, and fully supported the Board's decision.

### Conclusions of Law

From the foregoing I find and rule that judgment should be entered for the defendant.