**KAYFIELD CONSTRUCTION CORP.,**
Plaintiff-Appellant,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 237, Docket 25910.

United States Court of Appeals
Second Circuit.

Argued March 9, 1960.

Decided May 5, 1960.

George Weisbrod, New York City (Howard A. Sieven, New York City, on the brief), for plaintiff-appellant.

Elliott Kahaner, Asst. U. S. Atty., E. D. N. Y., Brooklyn, N. Y. (Cornelius W. Wickersham, Jr., U. S. Atty., and Malvern Hill, Jr., Asst U. S. Atty., Brooklyn, N. Y., on the brief), for defendant-appellee.

Before CLARK, WATERMAN and LEWIS,* Circuit Judges.

LEWIS, Circuit Judge.

Plaintiff-appellant filed this action under 28 U.S.C.A. § 1346(a) (2) seeking $8,659.77 from the United States as the value of work done beyond the scope and terms of a contract for repair work performed at the Brooklyn Navy Yard. Plaintiff's claim had earlier been rejected by the Navy contracting officer and, after full hearing, by the Navy Contract Appeals Panel of the Armed Services Board of Contract Appeals. The administrative decisions in each instance were

* Of the Tenth Circuit, sitting by designation.

based upon the conclusion that the work done was within the terms of the contract and consequently within the contract price. The trial court reached a similar conclusion but also denied plaintiff relief upon the grounds that the administrative decision was final and conclusive because it was not shown to be fraudulent, capricious, arbitrary, grossly erroneous or not supported by substantial evidence.[1] The matter was submitted to the trial court upon the record made before the Appeal Board, the parties agreeing that the testimony and exhibits should be received and considered to the same extent as if originally received at the trial.

■ Although the contract provided that finality should be accorded to administrative decision upon disputed questions of fact[2] it is apparent that the instant controversy is not one of fact but is one of law. The testimony taken before the Board was undisputed and probed only the question of whether the work done was within the terms of the contract or beyond its scope. Such a dispute calls for an interpretation of the contract and constitutes a question of law. Congress has denied finality to administrative decision in such case and the trial court should have considered the question as one falling within its original jurisdiction. 41 U.S.C.A. § 322. See McKinnon v. United States, D.C.Or., 178 F.Supp. 913; Kenny Const. Co. v. District of Columbia, 105 U.S.App.D.C. 8, 262 F.2d 926.

The essence of plaintiff's contract work obligation was to strengthen and level 21 wooden trusses on the second and third floors of a sawmill and boat shop building in the Brooklyn Navy Yard. As the work progressed it became apparent that both latent and surface obstructions interfered with the installation of tie rods and would necessitate relocation. The government conceded its obligation for additional expense caused by the latent obstructions; plaintiff conceded his contractual obligation to relocate steam line hangers, conduits and ducts; and the instant dispute arose as to whether a contractual obligation existed to relocate steam lines, water lines, sprinkler lines, steam mains, electric junction boxes and a conveyor.

Three documents are involved in the interpretation of the contract between the parties: the contract itself, the specifications, and an attached drawing. The contract recited that the contractor was to furnish the materials and perform the work of repair to second and third floor trusses "complete and ready for use." Article 5 of the contract, important here because of an alleged conflict between the drawings and specifications, provides:

"Anything mentioned in the specifications and not shown on the drawings or shown on the drawings and not mentioned in the specifications, shall be of like effect as if shown or mentioned in both. In case of difference between the drawings and specifications the specifications shall govern. Omissions from the drawings or specifications or the misdescription of details of work which are manifestly necessary to

---

1. 41 U.S.C.A. § 321: "No provision of any contract entered into by the United States relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be pleaded in any suit now filed or to be filed as limiting judicial review of any such decision to cases where fraud by such official or his said representative or board is alleged: *Provided, however,* That any such decision shall be final and conclusive unless

the same is fradulent (sic) or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence."

2. Article 16.—Disputes.
"* * * any dispute concerning a question of fact arising under this contract * * * shall be decided by the Contracting Officer * * * the Contractor may appeal * * * and the decision of the Secretary or his duly authorized representative for the hearing of such appeals shall be final and conclusive; * * *".

carry out the intent of the drawings and specifications, or which are customarily performed, shall not relieve the Contractor from performing such omitted or misdescribed details of work but they shall be performed as if fully and correctly set forth and described in the drawings and specifications."

The specifications warned the bidders on the job that:

"1–21.—Before submitting bids, bidders shall inspect the site and satisfy themselves as to existing conditions and the extent and character of the work."

and required that:

"3–01. * * * All dimensions shall be verified at site before commencing work. Procedure for performance of the work shall be as noted on the drawing * * * *The contractor shall relocate existing steam line hangers, conduits or ducts interfering with the installation of new tie rods. * * *" (Emphasis added.)

Note 10 of the notes to the drawing, entitled "Procedure for erection of new tie rods," provided:

"10. *Contractor to relocate all obstructions in way of tie rods.*" (Emphasis added.)

In addition to enumerating the obstructions requiring relocation, the specifications were precise in detailing the labor needed as carpenters, iron workers, painters, riggers, laborers and truck drivers. Further detail indicated the work included shoring, carpentry and joinery, iron and steel work, and painting. The contract designated minimum wage rates for the specified labor. The actual work required the employment of steam fitters, electricians and plumbers, trades not mentioned in the specifications. The contract as estimated and bid by plaintiff, limited to the relocation of the enumerated obstructions, did not consider and would not have required the additional crafts.

■ Under the circumstances, it becomes clear that the contract was persuasive toward the interpretation given it by plaintiff in estimating the cost of the job and the cautionary phrases were insufficient to alert a trusting bidder that the job involved more than shown upon the specifications. The government's knowledge of the location of steam lines and sprinkler systems and other obstructions was adequately shown by the testimony and it was in a better position to determine the extent of the job in this aspect than were the bidding contractors. In a case remarkably similar, Hollerbach et al. v. United States, 233 U.S. 165, 171, 34 S.Ct. 553, 555, 58 L.Ed. 898, the Supreme Court has stated:

"A government contract should be interpreted as are contracts between individuals, with a view to ascertaining the intention of the parties and to give it effect accordingly, if that can be done consistently with the terms of the instrument. In paragraph 33 the specifications spoke with certainty as to a part of the conditions to be encountered by the claimants * * * the specifications assured them of the character of the material,—a matter concerning which the government might be presumed to speak with knowledge and authority. We think this positive statement of the specifications must be taken as true and binding upon the government, and that upon it, rather than upon the claimants, must fall the loss resulting from such mistaken representations. We think it would be going quite too far to interpret the general language of the other paragraphs as requiring independent investigation of facts which the specifications furnished by the government as a basis of the contract left in no doubt * * * In its positive assertion of the nature of this much of the work it made a representation upon which the claimants had a right to rely without an investigation to prove its falsity. See United States v. Utah,

**220**

N. & C. Stage Co., 199 U.S. 414, 424, 50 L.Ed. 252, 255, 26 Sup.Ct.Rep. 69."

 The trial court took evidence upon the value of the disputed work and determined that the fair and reasonable cost of the work involved was $8,659.77 but held that the issue was one of fact not considered in the administrative process and consequently beyond the jurisdiction of the court. Since we conclude that the disputed work was beyond the scope of the contract it follows that the court was in error and that jurisdiction existed to entertain the issue. Cf. Allied Contractors v. United States, 124 F.Supp. 366, 129 Ct.Cl. 400; International Potato Corp. v. United States, Ct.Cl., 161 F.Supp. 602.

Reversed and remanded with directions to vacate the judgment of dismissal and enter judgment for plaintiff in the sum of $8,659.77.